UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA            :

        -v.-                          :

ALNOOR EBRAHIM,                     :

            Defendant.            :

                               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

12 Cr. 471 (JPO)

## GOVERNMENT'S SENTENCING MEMORANDUM

PREET BHARARA
United States Attorney
Southern District of New York
Attorney for the United States
    of America

ANTONIA M. APPS
Assistant United States Attorney

   - Of Counsel -

The Government respectfully submits this memorandum for the Court's consideration in connection with the sentencing of the defendant Alnoor Ebrahim.

## FACTUAL BACKGROUND

### I.    Offense Conduct

Alnoor Ebrahim worked at AT&T from approximately 2002 to 2010.  In the last two years of his employment, he worked in the business unit responsible for marketing various handset devices (such as the iPhone made by Apple or the Blackberry made by Research in Motion, among others), and had access to AT&T's sales numbers for those handset devices. AT&T's compliance policies prohibited the unauthorized disclosure of AT&T's confidential information, which included the information to which Mr. Ebrahim had access.

From in or about 2008 through 2010, Mr. Ebrahim also worked as a "consultant" for an expert networking firm called Primary Global Research ("PGR").  Mr. Ebrahim was paid $200 an hour to talk to clients of PGR, who were hedge funds and other investment firms.  During the telephone calls with PGR clients, Mr. Ebrahim disclosed material, nonpublic information ("inside information") concerning AT&T's sales of the various handset devices.  Specifically, Mr. Ebrahim disclosed unit sales numbers for these devices, often to the same investment firm analyst on monthly basis.  At times when Mr. Ebrahim disclosed iPhone sales numbers, AT&T was the exclusive service provider for the iPhone.  In addition, at certain relevant times, AT&T's wireless business accounted for approximately 40 percent of AT&T's business.

Between 2008 and 2010, Mr. Ebrahim made hundreds of calls to PGR clients.  Between 2008 and 2010, he was paid approximately $189,000 by PGR for his consulting activities. When Mr. Ebrahim disclosed AT&T's proprietary information to PGR's clients, he knew that the clients would use the information in making investment decisions in buying and selling

securities.  He also knew that he was disclosing AT&T's confidential, proprietary information in violation of AT&T's policies.

## II.   Sentences Of Other Defendants In The Expert-Networking Cases

Mr. Ebrahim was among top three most highly used consultants at PGR.  The other two consultants who were in the top three – Dan DeVore and Tony Longoria – have both pled guilty pursuant to cooperation agreements with the Government and have not yet been sentenced. However, one other PGR consultant – Manosha Karunatilaka – and other PGR employees, conduits of inside information, and PGR clients have been sentenced.  Their sentences and Guidelines ranges are summarized as follows:

| Defendant | Guidelines Range | Sentence |
|---|---|---|
| Manosha Karunatilaka | 37-46 months | 18 months |
| Winifred Jiau | 97-121 months | 48 months |
| Donald Longueil | 46-57 months | 30 months |
| Don Chin Trang Chu | 0-6 months | 2 years probation |
| James Fleishman | 37-46 months | 30 months |

Mr. Karunatilaka worked at Taiwan Semiconductor Manufacturing Company ("TSMC") and disclosed order numbers for TSMC's customers which accounted for approximately 70 percent of TSMC's business.  In contrast to Mr. Ebrahim, Mr. Karunatilaka engaged in significantly fewer consulting calls through PGR – earning approximately $35,000 – but Mr. Karunatilaka's Guidelines' range was significantly higher than Mr. Ebrahim's because, in Mr. Karunatilaka's case, the Government presented evidence of a $1.7 million trade made by a hedge fund client of PGR that was based in whole or in part on Mr. Karunatilaka's information.

Winifred Jiau repeatedly stole inside information from two publicly traded companies by

manipulating employees at those companies to provide her with information concerning financial earnings and other sensitive corporate information.  Ms. Jiau then sold the inside information to Donald Longueuil and two other hedge fund clients of PGR in exchange for over $200,000 in consultancy fees.  Ms. Jiau not only manipulated the sources at the public companies to provide her with inside information, she also demanded greater remuneration for her own criminal services.  Ms. Jiau was convicted after a jury trial before Judge Rakoff.

Messrs. Chu and Fleishman were employees of PGR.  Mr. Chu was only peripherally involved in PGR and was based in Taiwan.  Mr. Fleishman was centrally involved in orchestrating company insiders to provide inside information to PGR's hedge fund clients (including inside information provided by Mr. Ebrahim).  Mr. Chu pled guilty; Mr. Fleishman was convicted after a jury trial.

### III.    Mr. Ebrahim's Attempted Cooperation

Shortly after Mr. Ebrahim was approached by federal agents, he attempted to cooperate with the Government, and met with the United States Attorney's Office on a number of occasions.  However, the Government determined that Mr. Ebrahim would not be able to provide substantial assistance, and accordingly declined to enter into a cooperation agreement with Mr. Ebrahim.  The Government notes that it did not have any concern about Mr. Ebrahim's truthfulness during Mr. Ebrahim's proffer sessions with the Government.

### CONSIDERATION OF THE SECTION 3553(a) FACTORS

In determining a reasonable sentence, the sentencing judge is required to consider the factors set forth at 18 U.S.C. § 3553(a).  These factors include, among others, (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for

the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (3) the need for afford adequate deterrence to criminal conduct; and (4) the need to avoid unwarranted sentence disparity. *See* 18 U.S.C. § 3553(a).

At the time Mr. Ebrahim committed these crimes, he was an insider at an important technology company and trusted with valuable confidential information as part of his job. He stole AT&T's confidential information and provided it to multiple PGR clients during the course of his consultation relationship with PGR; indeed, he was among the top three PGR consultants in terms of frequency of use by PGR clients. Mr. Ebrahim provided sophisticated stock traders with an unfair advantage over the average investor. In so doing, Mr. Ebrahim knowingly and willfully broke the law.

In enacting laws to prohibit insider trading, Congress recognized that any deceptive or manipulative practice that influenced or related to trading activity undermined the function and purpose of a free market. Insider trading causes that harm – namely by undermining the public's confidence in the capital markets, and by suggesting to ordinary investors that they should not invest because those markets are rigged in favor of well-connected Wall Street professionals. Not only did Mr. Ebrahim's crimes harm the integrity of the markets, he harmed the public company whose business secrets he stole for his own benefit.

The Government notes, however, that Mr. Ebrahim immediately accepted responsibility for his crimes, and even attempted (unsuccessfully) to cooperate with the Government. The Court can, and should, take this immediate and full acceptance of responsibility into account under Section 3553(a). Additionally, as set forth in more detail above, Mr. Ebrahim was not the most culpable participant in the Government's investigation concerning expert networks.

## FORFEITURE AND RESTITUTION

The Government seeks forfeiture in the amount of Mr. Ebrahim's consulting fees from PGR, namely $189,893.

In addition, the Government seeks restitution in the amount of $315,096 in accordance with a letter submitted by AT&T, Mr. Ebrahim's former employer and a victim of his crime. *See* Letter from Steven R. Peikin, dated Oct. 15, 2012 (attached as Exhibit A hereto). This sum is based on: (1) legal fees incurred by AT&T in connection with the Government's investigation of Mr. Ebrahim, plus (2) 25 percent of Mr. Ebrahim's salary while he was at PGR.

## CONCLUSION

For the foregoing reasons, the Government respectfully submits that a sentence within the stipulated Guidelines range of 18 to 24 months is appropriate and "sufficient, but not greater than necessary, to comply with the purposes" of sentencing under 18 U.S.C. § 3553(a)(2).

Dated:   New York, New York
         October 21, 2012

Respectfully submitted,

PREET BHARARA
United States Attorney
Southern District of New York

By: _____
Antonia M. Apps
Assistant United States Attorney'
Tel: (212) 637-2198