UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                  :
UNITED STATES OF AMERICA          :
                                                  :            12 Cr. 471 (JPO)
                -against-                 :
                                                  :            MEMORANDUM AND
ALNOOR EBRAHIM,                    :                 ORDER
                                                  :
                              Defendant.   :
                                                  :
------------------------------------------------------------ X

J. PAUL OETKEN, District Judge:

On June 18, 2012, Defendant Alnoor Ebrahim pleaded guilty to one count of conspiracy to commit wire fraud and securities fraud. Ebrahim's fraudulent conduct consisted of stealing confidential information from his employer, AT&T, Inc. ("AT&T"), and providing it to Primary Global Research ("PGR") in exchange for money, knowing that it would be used to trade securities.

On October 15, 2012, AT&T submitted a request for restitution, pursuant to the Mandatory Victims Restitution Act of 1996 ("the MVRA"), 18 U.S.C. § 366A, in the amount of $315,096, arising from (1) a portion of the compensation AT&T paid Ebrahim during the period in which he engaged in fraudulent conduct and (2) legal fees and costs resulting from AT&T's representation in connection with the Government's investigation of Ebrahim's conduct. AT&T's request for restitution is supported by the Government and is opposed by Ebrahim. For the reasons that follow, AT&T is awarded restitution in the amount of $275,023.51.

**I.    Background**

On October 15, 2012, AT&T submitted a request for restitution. (Dkt. No. 9, Ex. A.) Several days later, in its sentencing memorandum, the Government sought "restitution in the

amount of $315,096 in accordance with [the] letter submitted by AT&T, Mr. Ebrahim's former employer and a victim of his crime." (Dkt. No. 9 ("Gov't. Sent. Mem.") at 6.) On October 25, 2012, this Court sentenced Ebrahim to a year and a day incarceration, a $10,000 fine, and the mandatory $100 special assessment. The determination of what amount of restitution should be ordered was deferred. On January 25, 2013, 90 days after sentencing, the Government submitted a brief in support of AT&T's request for restitution. (Dkt. No. 14.) Ebrahim submitted an opposition on February 14, 2013. (Dkt. No 17 ("Def.'s Opp'n.").) The Government replied on April 3, 2013. (Dkt. No. 19.)

  The MVRA requires restitution in fraud cases where "an identifiable victim or victims has suffered . . . a pecuniary loss." 18 U.S.C. § 366A(c)(1)(A)(ii)-(c)(1)(B). "Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence." *United States v. Bahel,* 662 F.3d 610, 647 (2d Cir. 2011). When "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process," restitution is not mandatory. 18 U.S.C. § 3663A(c)(3)(B). *But see United States v. Catoggio*, 326 F.3d 323, 328 (2d Cir. 2003) (restitution is proper in an "admittedly complex case" where "the district court, although aware of the difficulties involved in ordering restitution in this case, did not consider the process too burdensome").

  As noted above, AT&T has asked to be considered the victim of Ebrahim's crime, and has asked both for a portion of the compensation paid to Ebrahim by AT&T, as well as attorney's fees incurred in the course of this case.

**I.     Timeliness**

Title 18 U.S.C. § 366A(d)(1)(5) provides that, "[i]f the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court, and the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing."  Ebrahim argues that, because the Court did not determine the extent of AT&T's losses within 90 days of Ebrahim's sentencing, the Government's motion is untimely.

"[T]he purpose behind the statutory ninety-day limit on the determination of victims' losses is not to protect defendants from drawn-out sentencing proceedings or to establish finality; rather, it is to protect crime victims from the willful dissipation of defendants' assets." *United States v. Douglas*, 525 F.3d 225, 252 (2d Cir. 2008) (quoting *United States v. Zakhary,* 357 F.3d 186, 191 (2d Cir. 2004)).  Accordingly, "an extension of the proceedings beyond the 90-day period provides no basis for vacating the restitution order unless the defendant can show that the extension caused him actual prejudice." *Id*. at 252-53 (citing cases).

Here, Ebrahim asserts that awarding restitution outside the 90-day window will "specifically cause[] actual prejudice to the defendant who is incarcerated" and will "cause unfair delay and prejudice to the defendant." (Def.'s Opp'n. at 11.)  Nowhere in his brief, however, does Ebrahim explain how, and why, he will be actually prejudiced by an award of restitution at this time.  Therefore, AT&T remains entitled to restitution, despite the fact that the 90-day period has elapsed.  *Accord Douglas*, 525 F.3d at 253 ("Douglas has provided no indication that he was in any way prejudiced by the fact that the restitution order was entered on May 5, 2006, rather than May 1, and his challenge to the order's timeliness is thus rejected.").

## II.     AT&T as a Victim of Ebrahim's Crime

It is undisputed that, by pleading guilty to one count of conspiracy to commit securities fraud and wire fraud, Ebrahim is obligated to make restitution to his victims.  *See* 18 U.S.C. § 366A(c)(1)(A)(ii) (mandating that restitution be made to the victim of "any offense committed by fraud or deceit").  The MVRA defines the term "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, . . . any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern."  18 U.S.C. § 3663A(a)(2).  As detailed in the Information to which Ebrahim pleaded guilty, Ebrahim, an employee and fiduciary of AT&T, participated in a scheme "to deprive AT&T of the exclusive use of its intangible property, including certain confidential business information . . . ."  (Dkt. No. 4, at ¶ 12.)  Because AT&T was directly and proximately harmed by Ebrahim's criminal conduct, it is undoubtedly Ebrahim's victim under the MVRA.  *Accord United States v. Skowron*, 839 F. Supp. 2d 740, 744-46 (S.D.N.Y. 2012) (determining that Morgan Stanley was the victim of an employee's conspiracy to commit securities fraud where the deception of Morgan Stanley was an integral part of the defendant's scheme).

## III.    Restitution of a Portion of Ebrahim's Salary

AT&T requests 25 percent of the compensation AT&T paid to Ebrahim during the period in which Ebrahim engaged in fraudulent conduct.  Ebrahim argues that it would be improper for the Court to award AT&T a portion of his compensation, since Ebrahim has "forfeited his entire compensation to the government as part of the plea in this matter."  (Def.'s Opp'n. at 9.)  Ebrahim is mistaken.  The money previously forfeited by Ebrahim was based upon the compensation paid to him by PGR in exchange for inside information, rather than the

compensation paid to him by AT&T.  (*See* Gov't. Sent. Mem at 2.)  It is therefore entirely appropriate for AT&T to seek restitution in addition to the money already forfeited by Ebrahim.

There is no question that Ebrahim harmed AT&T by providing its sensitive, highly confidential information to securities traders in exchange for kickbacks.  Upon consideration of the record and the relevant law, the Court has determined that AT&T is entitled 20 percent of Ebrahim's salary from the relevant period, or $68,505.02.  Such a figure is consistent with precedent in this circuit.  *See, e.g.*, *Skowron*, 839 F. Supp. 2d at 749 (awarding Morgan Stanley 20 percent of employee's compensation as victim of employee's insider trading scheme and cover-up).

## IV.     Restitution of Attorney's Fees and Expenses

AT&T also seeks attorney's fees incurred during the investigation and legal proceedings arising from Ebrahim's conduct.

Under the MVRA, recovery may include "necessary . . . other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 366A(c)(1)(A)(ii)-(c)(1)(B).  It this Circuit, "'other expenses' incurred during the victim's participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense may include attorney's fees and accounting costs," *United States v. Amato,* 540 F.3d 153, 159-60 (2d Cir. 2008), provided that such expenses were "necessary."  Thus, in *Amato*, the fees stemming from an employer's internal investigation that preceded, and then prompted, the Government's investigation were determined to be compensable under the MVRA.  In *United States v. Skowron*, Judge Cote held that victim Morgan Stanley could receive reimbursement for expenses related to the SEC investigation of the defendant's insider trading scheme, as "[a]ny other conclusion would create

an artificial and unrealistic distinction between SEC civil investigations and criminal prosecutions of securities fraud." 839 F. Supp. 2d. at 748-49. In *United States v. Gupta*, No. 11 Cr. 907 (JSR), 2013 WL 662954, at *1 (S.D.N.Y. Feb. 25, 2013), victim Goldman Sachs argued that it was entitled to reimbursement for attorney's fees arising from a parallel SEC investigation, as well as from the criminal prosecution of Raj Rajaratnam, Gupta's tippee. Because "Gupta was convicted of conspiring with Rajaratnam to commit securities fraud, thus confirming the relevance of the Rajaratnam investigation, at all its stages, to the instant case," Judge Rakoff held that Goldman Sachs could recover expenses related to both the SEC action and the Rajaratnam trial, despite the fact that the Gupta investigation was not yet in "high gear" when the Rajaratnam trial took place. *Id*. at *3.

Here, AT&T seeks restitution in the amount of $229,464.99 for legal fees and costs related to AT&T's response to the Government's investigation of Ebrahim. Ebrahim's principal objection is that all of the hours billed by AT&T's attorneys occurred after Ebrahim had admitted his involvement in the crime and "unequivocally" indicated his intent to plead guilty and cooperate in the investigation on December 9, 2010. (Def.'s Opp'n. at 3.) According to Ebrahim, it is not conceivable that over two hundred thousand dollars of legal fees were "necessarily" incurred after Ebrahim's admission of guilt. Ebrahim can point to no case law standing for the proposition that expenses incurred after an admission of guilt are not "necessarily" incurred. In fact, the Government can, and often does, continue to investigate a crime even after a defendant admits his guilt and states his intention to plead guilty, especially because a defendant is free to change his mind and go to trial up to the moment he takes responsibility for his actions in open court. AT&T's attorney's fees were all accrued well before Ebrahim pleaded guilty on June 18, 2012.

Ebrahim also objects to any expenses incurred as a result of James Fleishman's trial. There can be no question, however, as to the relevance of the Fleishman trial to this action. Fleishman, a co-conspirator of Ebrahim, was a PGR employee who connected PGR consultants, including Ebrahim, with PGR clients. Indeed, Ebrahim's role in the scheme was specifically discussed at Fleishman's trial. Thus, the expenses incurred in connection with the Fleishman trial were necessarily incurred as part of AT&T's response to the Government investigation of AT&T.

In sum, the Court finds that the attorney's fees incurred by AT&T fall within the scope of the MVRA. That being said, the Court's review of Sullivan & Cromwell LP's billing records suggests that some of the billing may have been, in some discrete instances, excessive. It also appears that there was an unnecessary amount of lawyers involved in certain tasks. Following Judge Rakoff's lead in *Gupta*, this Court therefore will deduct ten percent of the fees requested by AT&T. *See Gupta*, 2013 WL 662954, at *4. Accordingly, AT&T is entitled to $206,518.49 in attorney's fees and expenses.

V.     Conclusion

For the foregoing reasons, AT&T is entitled to restitution in the amount of $275,023.51. The Court will forthwith issue an amended judgment of conviction reflecting this determination.

SO ORDERED.

Dated:  New York, New York
        May 21, 2013

_____
J. PAUL OETKEN
United States District Judge